SHAHROKH SHEIK, BAR ID #250650
shahrokh@weinberg-gonser.com
CHARANJIT SINGH, BAR ID # 311609
Charanjit@weinberg-gonser.com
WEINBERG GONSER LLP
10866 Wilshire Blvd., Suite 1650
Los Angeles, California 90024
Telephone: (424) 239-2850
Facsimile: (424) 238-3060

Attorneys for Plaintiff,
Amir Vokshoor, M.D.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIR VOKSHOOR, M.D., an individual, | Case No.  2:20-cv-4361 |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES** |
| CKN GROUP, INC., a Delaware Corporation; KELLY LYON, an individual, SUSAN LYON, an individual; and DOES 1-20, | 1. **Violation of Section 10(b) of The Exchange Act and Rule 10b-5**<br>2. **Breach of Contract**<br>3. **Breach of The Implied Covenant of Good Faith and Fair Dealing**<br>4. **Breach of Fiduciary Duties**<br>5. **Fraudulent Misrepresentation**<br>6. **Conversion** |
| Defendants. | |
| | **[DEMAND FOR JURY TRIAL]** |

COMES NOW Plaintiff, AMIR VOKSHOOR, M.D., an individual domiciled in the County of Los Angeles, for causes of action against Defendants, CKN GROUP, INC., a Delaware Corporation, KELLY LYON, an individual, SUSAN LYON, an individual, and DOES 1-20, who complains and alleges as follows:

///

///

///

///

1

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States. In this action, the Court has jurisdiction because the claims arise under 28 U.S.C. §1337 and §27 of the Exchange Act of 1934.

2.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as complete diversity exists between the parties because they are citizens of different states (California, Delaware, and Ohio) and the amount in controversy exceeds $75,000.

3.     Venue is proper pursuant to 28 U.S.C. §1391(b) because the events giving rise to the allegations of this Complaint occurred in this district.

## THE PARTIES

4.     At all times mentioned herein, Plaintiff, AMIR VOKSHOOR, M.D., (hereinafter "Plaintiff" or "Dr. Vokshoor"), is an individual domiciled in Los Angeles County, California.

5.     At all times mentioned herein, Defendant, CKN GROUP, INC. (hereinafter "CKN"), is a Delaware corporation and, upon information and belief, has its principal place of business in the State of Delaware.

6.     At all times mentioned herein, Defendant KELLY LYON (hereinafter "Kelly") is, upon information and belief, an individual residing in the State of Ohio.

7.     At all times mentioned herein, Defendant SUSAN LYON (hereinafter "Susan") is, upon information and belief, an individual residing in State of Ohio.

8.     At all times herein there was such a unity of interest and ownership between CKN, Kelly, and Susan that the separate personalities of the entities do not, in reality, exist. On information and belief, Defendants Kelly and Susan comingled funds and assets with CKN, used the same employees, and the use of CKN was a mere shell or conduit for the affairs of Defendants. Defendants Kelly and Susan have also inadequately capitalized CKN, disregarded corporate formalities, and failed to segregate corporate assets and records.

COMPLAINT FOR DAMAGES

9.      The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 20, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants are ascertained, Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities.  Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a DOE is responsible in some manner for each other Defendants' acts and omissions and for the resulting injuries and damages to Plaintiff, as alleged herein.

10.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, CKN, Kelly, Susan and DOES 1 through 20, inclusive, (collectively "Defendants") and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture.

## FACTAUL ALLEGATIONS

11.     CKN is a healthcare company that uses its healthcare software platform and digital data collection system for healthcare services known as E-Fellow. Kelly and Susan Lyons are the founders of CKN and each serves in an executive position for CKN. Kelly is CEO of CKN and Susan is a controlling executive.

12.     On or around March 2014, CKN Group, Inc., a Delaware corporate ("CKN") entered into a preferred stock purchase agreement with various investors to raise capital for business related services and expansion.

13.     On or around 2015, Kelly contacted Dr. Amir Vokshoor to become an investor in CKN. Kelly made many representations to Dr. Vokshoor, including the benefits of being an investor, that he would receive distributions from CKN.

14.     On or around April 25, 2015, Dr. Vokshoor became a shareholder of CKN by purchasing Fifty Thousand (50,000) shares of Series A Preferred Stock (the "Preferred Stock") via the Series A Preferred Stock Purchase Agreement dated March 4, 2014 ("Preferred Stock Agreement").  Dr. Vokshoor bought the Preferred Stock for the amount of Twenty-Five Thousand Dollars ($25,000) (the

"Investment").

15.     At the time of his investment, Dr. Vokshoor was never informed about any liability of the CKN, specifically no significant liability in the form of over $500,000 of deferred compensation that was allegedly owed to Kelly and his wife, Susan. Kelly nor his wife Susan informed Dr. Vokshoor of this liability during their conversations when they solicited Dr. Vokshoor to invest in CKN.

16.     From 2015 until present, Dr. Vokshoor has not received any distributions or dividends associated with his Preferred Stock.

17.     On or about June 20, 2017, CKN entered into an asset purchase agreement (the "Asset Purchase Agreement") with K2M, Inc., a Delaware corporation ("K2M"). Pursuant to the Asset Purchase Agreement, CKN was to receive four (4) separate payments of Two-Hundred and Fifty Thousand Dollars ($250,000), or, One Million Dollars ($1,000,000) in aggregate (the "Initial Payment") in exchange for E-Fellow.  CKN was also to receive certain "milestone" payments, if certain conditions were met.

18.     K2M paid CKN One Million Dollars ($1,000,000) in connection with the Initial Payment in 2017.

19.     At the time, Kelly informed Dr. Vokshoor that he was not entitled to any distributions in connection with the Initial Payment received by CKN.

20.     On information and belief, Kelly and Susan were each paid One Hundred Thousand Dollars ($100,000), or, Two Hundred Thousand Dollars ($200,000) in aggregate in connection with their respective holdings of preferred and common stock in CKN.

21.     On information and belief, Kelly and Susan each owned 30.080 percent of CKN's common stock and 33.860 percent of CKN's preferred stock. After the sale of CKN assets, Kelly and Susan received distributions as a result of the Initial Payment (and in connection with their respective holdings of preferred and common stock).

22.     Dr. Vokshoor was deprived of the benefit of his investment (namely, distributions in connection with his preferred stock ownership in CKN) despite CKN's realized gain in connection with the Initial Payment and Kelly and Susan's similar realized personal gain. Kelly and Susan apparently received distributions in connection with both their respective preferred and common stock holdings, but

4

deprived Dr. Vokshoor and other preferred stockholders from the benefit of their bargain.

23.    Defendants CKN, Kelly, and Susan had represented to Dr. Vokshoor that the Series A Preferred Stock shareholders would have priority in distributions in connection with any capital transactions, including an asset sale. Dr. Vokshoor never received any distributions.

24.    In and around early 2019, Dr. Vokshoor's counsel reached out to Kelly to inquire about distributions owed pursuant to the Preferred Stock Agreement. A demand for an accounting was issued to Kelly on or around June 20, 2019.  After significant delay, Kelly eventually provided CKN's 2017 annual tax return, along with an undated accounting statement (the "Accounting Statement").  The Accounting Statement evidenced a payment of Five Hundred Ninety Thousand Four Hundred and Ninety-One Dollars ($590,491) for a "Note Payable Revolving Credit Line since 2013."

25.    Kelly represented that this line item was deferred compensation paid to himself and his wife.

26.    At no time was Dr. Vokshoor advised of any potential obligation in connection with deferred compensation prior to his investment and involvement with CKN.

27.    Dr. Vokshoor would never have invested his personal finances into CKN had he been informed that deferred compensation would be owed to Kelly and Susan (specifically, prior to any distributions to preferred stockholders) in connection with a capital transaction and that Kelly and Susan would have priority to any payments and distribution over preferred stock shareholders.

28.    On information and belief, Susan, also an officer and controlling executive of CKN, knew that distributions were owed to Dr. Vokshoor (and other preferred stockholders) in connection with the Initial Payment, but conspired with her husband to deprive Dr. Vokshoor and other stockholders of their ownership and distribution rights in CKN.

29.    Despite the demand, Kelly has failed to provide an employment agreement for himself or Susan evidencing the deferred compensation.  Similarly, Kelly has failed to provide any corporate minutes, corporate resolutions, or any other appropriate documentation appropriately evidencing that he and his wife were actually owed the payments they actually received (in spite of the distributions that were owed to Dr. Vokshoor and others).

30.     Kelly and Susan mispresented to Dr. Vokshoor and, upon information and belief, the liabilities owed to Kelly and Susan from CKN.

**FIRST CAUSE OF ACTION**

**[Violation of Section 10(b) of the Exchange Act and Rule 10b-5]**

**(Against All Defendants)**

31.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

32.     At all times relevant, defendants Kelly and Susan and defendant CKN carried out a plan, scheme, and course of conduct which was intended to and did deceive Plaintiff. Defendants made false statements and failed to disclose material facts about CKN's liabilities to Plaintiff, in that Kelly and Susan were owed deferred compensation over $500,000 and this was a liability on CKN, which they knew about and chose to keep hidden to induce Plaintiff to invest in CKN.

33.     Defendants violated Section §10(b) and Rule 10b-5 in that they:

    i.    Employed schemes and artifices to defraud;

    ii.   Made untrue statements and omissions of material facts in order to get Plaintiff to invest his money into CKN;

    iii.  Plaintiff did rely on those misleading facts and omissions;

    iv.   As a result, Plaintiff has lost all of his investment due to Defendants' improper conduct; and

    v.    If not for Defendants' material misrepresentations and omissions, Plaintiff would never had invested.

34.     As a direct and proximate cause of the unlawful acts and conduct alleged herein, Plaintiffs has suffered and continues to suffer damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**[BREACH OF CONTRACT]**

**(Against All Defendants)**

35.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

36.     Plaintiff and Defendant entered into the Agreement.

37.     Plaintiff performed all, or substantially all, of its obligations under the Agreement required.

38.     Defendants breached the Agreement by engaging in certain conduct including, but not limited to, failing to make distributions to preferred stockholders despite making distributions to controlling members Kelly and Susan.

39.     As a result of defendants' breach, Plaintiff has been damaged in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**[BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING]**

**(Against All Defendants)**

40.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

41.     Plaintiff and Defendants entered into the Agreement.

42.     Plaintiff did all the significant things the Agreement required him to do.

43.     All conditions required Defendants to perform had occurred.

44.     Defendants intentionally, fraudulently, and unfairly interfered with Plaintiff's right to receive the benefit of the contract by engaging in certain conduct including, but not limited to, failing to make distributions to its preferred stockholders as required and profiting from the sale of CKN.

45.     Plaintiff has been harmed by this conduct in an amount to be proven at trial.

COMPLAINT FOR DAMAGES

**FOURTH CAUSE OF ACTION**

**[BREACH OF FIDUCIARY DUTIES]**

**(Against All Defendants)**

46.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

47.     At all times relevant, defendants Kelly and Susan were controlling members of defendant CKN.

48.     At all times relevant, Plaintiff is a preferred stockholder of defendant CKN.

49.     Defendants owed to Plaintiff and other investors the duty of care and loyalty to not self-deal.

50.     Defendants breached their duties by failing to uphold the Agreement and act as the Agreement required by engaging in improper conduct, including but not limited to, failing to make distributions at the time of sale of CKN and defendants Kelly and Susan used the proceeds of the sale to pay themselves a salary. Defendants also failed to inform Plaintiff and, upon information and belief, the other investors of the sale of CKN.

51.     As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

**[FRAUDULENT MISREPRESENTATION]**

**(Against All Defendants)**

52.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

53.     Defendants made multiple misrepresentations and omissions to Plaintiff in order to entice Plaintiff to invest in CKN including but not limited to, falsely making statements and omissions regarding the deferred compensation of Kelly and Susan in excess of $500,000.

54.     These representations were false.

8

55.   Defendants made these representations knowingly, intending to induce Plaintiff to invest.

56.   Plaintiff reasonably relied on these representations and invested his money.

57.   As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**[CONVERSION]**

**(Against All Defendants)**

58.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

59.   Plaintiff had a right to proceeds of the sale of CKN as preferred stockholder.

60.   Defendants intentionally and substantially interfered with Plaintiff's right by taking possession of the proceeds of the sale of CKN and profiting personally and without the informed consent of Plaintiff and, upon information and belief, the other investors.

61.   Plaintiff has been harmed by this conduct in an amount to be proven at trial.

62.   Plaintiff requests that this court place the proceeds of the sale of CKN in a constructive trust until this lawsuit is settled and proceeds can be made to investors.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MELISA OWENS prays judgment against Defendants as follows:

A.      General damages in an amount according to proof;

B.      Special damages in an amount according to proof;

C.      Punitive and/or exemplary damages in an amount according to proof;

D.      Constructive trust on proceeds of CKN's sale'

E.      Attorneys' fees as applicable;

F.      Costs of suit herein; and

G.      For such other and further relief as the Court deems proper.


DATED: April 29, 2020                    WEINBERG GONSER LLP


                                         By:  /s/ Shahrokh Sheik_____
                                              SHAHROKH SHEIK
                                              CHARANJIT SINGH
                                              Attorneys for Plaintiff

COMPLAINT FOR DAMAGES

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all his cause of actions and issues alleged in this Complaint.

DATED: April 29, 2020                               WEINBERG GONSER LLP


                                                    By:  /s/ Shahrokh Sheik
                                                         SHAHROKH SHEIK
                                                         CHARANJIT SINGH
                                                         Attorneys for Plaintiff

11